# METROPOLITAN RAILROAD COMPANY *v.* DISTRICT OF COLUMBIA.

## APPEAL FROM AND IN ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 16.  Argued October 24, 1904.—Decided November 28, 1904.

A condemnation proceeding initiated before a court in the District of Columbia, conducted under its supervision, with power to review and set aside the verdict of a jury, and with the right of review in an appellate tribunal is in its nature an action at law. The jurisdiction of this court in reviewing the judgment of the Court of Appeals of the District in such a proceeding is not by appeal, but only by writ of error, and this court cannot pass upon errors assigned unless the record contains a bill of exceptions allowed and authenticated by the judge.

Parties cannot by affidavits or agreements cause that to become a bill of exceptions which is not such in a legal sense.

UPON this record the Metropolitan Railroad Company seeks, both by appeal and writ of error, to obtain a review of the action of the Court of Appeals of the District of Columbia, affirming an order of the Supreme Court of the District, which

order sustained an award against the company, contained in the verdict of a jury rendered in condemnation proceedings, under an act of Congress. 31 Stat. 668. The statute referred to is entitled "An act authorizing and requiring the Metropolitan Railroad Company to extend its lines on old Sixteenth street." Briefly, the act authorized and required the company to extend its lines over the streets to which the act referred, and for the purpose of enabling this to be done directed the commissioners of the District to commence the necessary proceedings to acquire the land needed for the widening of the streets. It was directed that the condemnation proceedings should be commenced in the Supreme Court of the District upon notice, under the supervision of the court, to all interested parties. A jury of seven was directed to be empaneled by the court, and this jury, after organizing and viewing the premises, were to "proceed, in the presence of the court, if the court shall so direct, or otherwise as the court may direct, to hear and receive such evidence as may be offered or submitted on behalf of the District of Columbia and by any person or persons having any interest in the proceedings for the extension of said street." The act required the jury to return a written verdict fixing the amount of damages sustained by the lot owners by reason of the taking of their property for the widening of the streets, and also to ascertain and fix the benefits which would result from the work, not only to the lot owners but to the Metropolitan Railroad Company, and the sum of the benefits was directed to be assessed against the railroad company and the lot owners. Power was conferred upon the court to hear any objections which might be made to the verdict and to set it aside in whole or in part if the court were satisfied that it was unjust or unreasonable.

Section 13 of the act is as follows:

"Sec. 13. That no appeal by any interested party from the decision of the Supreme Court of the District of Columbia confirming the assessment or assessments for benefits or damages herein provided for, nor any other proceedings at law or

in equity by such party against the confirmation of such assessment or assessments, shall delay or prevent the payment of the award to others in respect to the property condemned nor the widening of such streets: *Provided, however,* That upon the final determination of said appeal or other proceeding at law, or in equity, the amount found to be due and payable as damages sustained by reason of the widening of the streets under the provisions hereof shall be paid as hereinbefore provided."

The transcript before us shows that in July, 1900, the commissioners of the District instituted the proceedings in condemnation required by the act, and that among others the Metropolitan Railroad Company was made a party. A jury having been empaneled they were directed by the court to view the premises, and outside of the presence of the court to hear such evidence as might be produced by the interested parties, and to return their verdict to the court. Soon afterwards the railroad company filed an answer praying that it might be dismissed from the proceedings, because the act of Congress requiring the company to extend its lines was unconstitutional, and because the company could not be made liable for any assessment for benefits conferred upon it by the proposed work, as it owned no property in the District embraced by the improvement. Immediately following the answer of the railroad company is set out what purports to be instructions asked by the railroad company to be given by the court to the jury. Each of these instructions is marked by the clerk as filed on a named date, and below each instruction, unaccompanied by any certificate from a judge, is the statement "Rejected with permission to present later." Following these papers is what purports to be a notice on behalf of the railroad company, that on a given day it would present a request to the court for the giving of the refused instructions as well as of others, and the paper in question, as also the instructions referred to in it, are marked filed by the clerk on a date named, and below some of the instructions, without any

certificate whatever by the judge, is a recital "Rejected and exception by the Railroad Company" or "Granted, and exception by D. C. and also by G. F. Williams on behalf of certain property owners."

The transcript shows that the jury returned a verdict to the court fixing the damages and benefits, and that there was assessed against the railroad company for benefits the sum of $25,000. A rule *nisi* was entered to confirm the verdict, and the railroad company filed the following exceptions:

"The Metropolitan Railroad Company excepts to the finding, assessment, and award against it for alleged benefits to it from the proposed widening and extension of the said Columbia road and Sixteenth street, and for cause or ground of exception shows:

"1. That the said finding, assessment, and award are without evidence to support the same.

"2. That the said finding, assessment, and award are contrary to the evidence.

"3. That the said finding, assessment, and award are contrary to the weight of the evidence.

"4. For errors of law in the instructions given and refused by the court to the jury over the objection and exception of the Metropolitan Railroad Company before the said finding, assessment, and award were made, as shown by the record of the said cause."

After the filing of these exceptions the transcript shows that a paper was filed by the clerk, which is styled "Petition of Metropolitan R. R. Co., to make of record testimony as to the benefits to Metropolitan Railroad Company." In this petition it is recited that the evidence before the jury was taken outside of the presence of the court, and that the only testimony before the jury on the subject of the benefits to the railroad company, as shown by affidavits annexed to the petition, was that of James B. Lackey, which was reduced to writing by a stenographer. The court was asked to allow the affidavits and deposition to be filed as part of the record, "the

same being essential to the hearing and determination of this respondent's" exceptions to said award filed in this cause, and it being impossible for this respondent properly to defend its rights in the premises without in some way causing the said evidence, and the fact that it was the only evidence in the case upon the question of said benefits to this respondent, to appear of record." Upon this petition the following endorsement is shown: "Let the within petition be filed. A. B. Hagner, Justice." The transcript then sets out what purports to be the affidavits and testimony of Lackey, referred to in the petition.

It is also shown that upon a subsequent date the Supreme Court of the District, after due notice to all interested parties, and after hearing arguments of counsel upon the exceptions to the verdict, overruled the exceptions and entered a final decree confirming the award and assessment as found by the jury, except in a minor particular, which need not be noticed. There is nothing in the transcript showing that any exception was reserved to the overruling of the objections to the award interposed by the company, and no bill of exceptions is shown to have been allowed by the judge. Immediately at the foot of the final decree appears the following:

"And from so much of the above decree as overrules its exceptions and confirms the verdict, award, and assessment against it, the Metropolitan Railroad Company appeals in open court, and the penalty of the appeal bond is fixed by the court at one hundred dollars.

                "A. B. HAGNER, *Asso. Justice.*"

Next follows a stipulation signed by the attorneys for the District and for the railroad company as to what should constitute the transcript of record for the purposes of the appeal of the Metropolitan Railroad Company. Item 11 reads as follows:

"Petition of Metropolitan Railroad Co. to make of record certain testimony and allowance of same, filed November 24, 1900.

"Motion to vacate order on said petition."

The motion last referred to, however, does not appear in the transcript.

On the appeal of the railroad company the Court of Appeals affirmed the order appealed from, 20 App. D. C. 421, and from its action in so doing the railroad company prayed and was allowed an appeal to this court. About a month afterwards the attorney for the railroad company filed in said Court of Appeals a motion in the cause, reading as follows:.

"And now comes the appellant by its counsel and shows to the court that because of the fact that the record in this cause contains what may possibly be considered a bill of exceptions it may be that the proper remedy would be held to be a writ of error instead of an appeal to the Supreme Court of the United States. It therefore prays that this honorable court, in addition to the appeal which was granted to it to the Supreme Court of the United States in this cause on the 24th day of October, 1902, it may also be allowed a writ of error to said court, and that the supersedeas bond required upon said appeal may also be taken and accepted as a supersedeas bond upon said writ of error."

An entry appears in the transcript of the allowance of a writ of error, the filing of a bond conditioned for the prosecution both of the appeal and writ of error, and the transcript contains citations, as well on the writ of error as on the appeal, signed by the Chief Justice of the Court of Appeals. The consolidated proceedings, by appeal and writ of error, is the one which is now here for review.

*Mr. J. J. Darlington* and *Mr. C. C. Cole* for appellant and plaintiff in error.

*Mr. E. H. Thomas,* with whom *Mr. Andrew B. Duvall* was on the brief, for appellee and defendant in error.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

Assuming that the matters complained of are susceptible of review by this court, the first question is whether our jurisdiction is dependent upon the appeal or the writ of error.

That a proceeding involving the exercise of the power of eminent domain is essentially but the assertion of a right legal in its nature has been determined. So also the decisions of this court have settled that a condemnation proceeding initiated before a court, conducted under its supervision, with power to review and set aside the verdict of the jury, and with the right of review vested in an appellate tribunal, is in its nature an action at law. *Kohl* v. *United States*, 91 U. S. 367, 376; *Searl* v. *School District No. 2*, 124 U. S. 197; *Chappell* v. *United States*, 160 U. S. 499, 513.

The proceedings provided for in the act of June 6, 1900, being of this character, it is, we think, manifest that the jurisdiction of this court can be exercised only by writ of error.

When both the proceeding by appeal and that by writ of error were allowed the jurisdiction of this court to review the judgments and decrees of the Court of Appeals of the District of Columbia was regulated by section 233 of the Code of the District of Columbia. 31 Stat. 1189, 1227. In effect that section was but a reënactment of the then existing provisions of the eighth section of the act of February 9, 1893, which act established the Court of Appeals of the District of Columbia. By said section of the code the power of this court to review by writ of error or appeal the judgments or decrees of said Court of Appeals, excluding certain exceptional and enumerated cases, is limited to cases where the matter in dispute, exclusive of costs, exceeds the sum of five thousand dollars, and such power to review is to be exerted only in the same manner and under the same regulations as theretofore prevailed before the organization of the Court of Appeals in cases

of writs of error on judgments or appeals from decrees rendered in the Supreme Court of the District of Columbia.

Now, as it is settled by the authorities previously referred to that the proceeding in question was legal in its nature and not one of equitable cognizance, and as it has also been settled that the jurisdiction of this court prior to the act of 1883, to review the final judgments or decrees of the Supreme Court of the District of Columbia, did not give power to review by appeal, a matter not of equitable cognizance, *Ormsby* v. *Webb*, 134 U. S. 47, 64, it necessarily follows that we are without jurisdiction to review the action of the Court of Appeals of the District of Columbia on the appeal here taken, and that appeal must, therefore, be dismissed.

Thus disposing of the appeal we come to consider the case on the writ of error. The errors assigned in the brief of counsel are as follows:

"The court below erred in sustaining the trial court:

"1st. *In refusing to set aside the assessment because not supported by the evidence, and because contrary to the same and the weight thereof.*

"2d. *In refusing to instruct the jury that no assessment could be made against it as a corporation, but only against such of its property, if any, as might be benefited.*

"3d. *In refusing to instruct the jury that no assessment of benefits could be made against appellant.*"

In view of the condition of the record, as disclosed by the statement of the case which we have made, we are of opinion that we cannot pass upon the errors embraced by these assignments.

The inability so to do results from the fact that there is no bill of exceptions in the record showing that the Supreme Court of the District of Columbia was asked to and refused to give the alleged instructions upon which the second and third assignments of error depend, nor does it appear, from a bill of exceptions or in any other appropriate mode, upon what the Supreme Court of the District of Columbia acted

in considering the exception expressly stated to be based upon the evidence. Not only this, but there is nothing of record exhibiting the fact that any exception was duly taken to the action of the court in overruling the objections urged by the railroad company to be confirmation of the verdict of the jury.

True it is that the transcript contains what purport to be certain instructions asked and refused, marked filed by the clerk. True also is it that there is in the printed transcript a petition and other papers concerning the evidence given before the jury, to which we have referred in the statement of the case. And it is also true that there is in the printed transcript an agreement between counsel, reciting that the court allowed the prayer of the petition. But in the absence of a bill of exceptions, allowed and authenticated by the judge, these documents form no part of the record in this court, which we have alone the right to consider in determining the merits of the errors assigned. *Young* v. *Martin,* 8 Wall. 354; *Baltimore & Potomac R. R. Co.* v. *Sixth Presbyterian Church,* 91 U. S. 127; *Clune* v. *United States,* 159 U. S. 590, 593; *Nelson* v. *Flint,* 166 U. S. 276, 279.

In *Young* v. *Martin,* where entries had been made by the clerk in his minutes, stating the filing of a demurrer, argument thereon and overruling of the demurrer, and that exception had been taken by plaintiff, it was held that the exception was not available. The court said (p. 356):

"These entries do not present the action of the court and the exceptions in such form that we can take any notice of them. It is no part of the duty of the clerk to note in his entries the exceptions taken, or to note any other proceedings of counsel, except as they are preliminary to, or the basis of, the orders or judgment of the court."

It may be observed in passing that whilst it is not now necessary to seal a bill of exceptions, Rev. Stat. sec. 953, the other requisites referred to are essential.

In *Baltimore & Potomac R. R. Co.* v. *Sixth Presbyterian*

*Church*—a case similar in character to that under review—the court said (pp. 130, 131):

"Neither depositions nor affidavits, though appearing in the transcript of a common law court of errors, can ever be regarded as a part of the record, unless the same are embodied in an agreed statement of facts, or are made so by a demurrer to the evidence, or are exhibited in a bill of exceptions.

\*    \*    \*    \*    \*    \*    \*    \*

"Exceptions may be taken by the opposite party to the introduction of depositions or affidavits; and the party introducing such evidence in a subordinate court may insist that the court shall give due effect to the evidence, and, in case of refusal to comply with such request, may except to the ruling of the court, if it be one prejudicial to his rights. Where neither party excepts to the ruling of the court, either in respect to its admissibility or legal effect, the fact that such a deposition or affidavit is exhibited in the transcript is not of the slightest importance in the Appellate Court, as nothing of the kind can ever constitute the proper foundation for an assignment of error. *Suydam* v. *Williamson*, 20 How. 433.

\*    \*    \*    \*    \*    \*    \*    \*

"Inquisitions like the present one bear a strong analogy in many respects to the report or award of referees appointed under a rule of court, to whom is referred a pending action. Referees in such cases make their report to the court; and in such a case the report, unlike an award at common law, must be confirmed before the prevailing party is entitled to the benefit of the finding of the referees. When the report is filed in court the losing party may file objections in writing to the confirmation of the report, and may introduce evidence in support of the objections; and it is well-settled law that the ruling of the court in overruling such objections is the proper subject of a bill of exceptions. *Railroad* v. *Myers*, 18 How. 250."

In *Clune* v. *United States*, in the course of the opinion the court said (159 U. S. 593):

"Finally, there is a claim of error in the instructions, but the difficulty with this is that they are not legally before us. True, there appears in the transcript that which purports to be a copy of the charge, marked by the clerk as filed in his office among the papers in the case; but it is well settled that instructions do not in this way become part of the record. They must be incorporated in a bill of exceptions, and thus authenticated by the signature of the judge. This objection is essentially different from that of the lack or the sufficiency of exceptions. An appellate court considers only such matters as appear in the record. From time immemorial that has been held to include the pleadings, the process, the verdict, and the judgment, and such other matters as by some statutory or recognized method have been made a part of it."

That parties by their affidavits or agreements cannot cause that to become a bill of exceptions which is not such in a legal sense, is settled. *Nelson* v. *Flint*, 166 U. S. 276, 279; *Malony* v. *Adsit*, 175 U. S. 281, 285, and cases cited.

As it results that the record before us does not exhibit error, the judgment of the Court of Appeals of the District of Columbia must be and it is

*Affirmed.*